**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

RIK IOF MILLENNIA BUCK
PORTFOLIO, LLC
200 Park Ave., Suite 216
Beachwood, Ohio 44122,

and

LOBO FEROZ, LLC
200 Park Ave., Suite 216
Beachwood, Ohio 44122,

and

JONATHON GRASSI
200 Park Ave., Suite 216
Beachwood, Ohio 44122,

       Plaintiffs,

v.

BRANDEGEE GARDEN NY, LLC
c/o Millennia Housing Development, Ltd.
4000 Key Tower, 127 Public Square
Cleveland, Ohio 44114,

and

BRANDEGEE GARDEN NY MM, LLC
c/o Millennia Housing Development, Ltd.
4000 Key Tower, 127 Public Square
Cleveland, Ohio 44114,

and

BUCK APARTMENTS NY, LLC
c/o Millennia Housing Development, Ltd.
4000 Key Tower, 127 Public Square
Cleveland, Ohio 44114,

and

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.

**COMPLAINT FOR DECLARATORY
RELIEF, ACCOUNTING AND MONEY
DAMAGES**

**(JURY DEMAND ENDORSED
HEREON)**

BUCK APARTMENTS NY MM, LLC )
c/o Millennia Housing Development, Ltd. )
4000 Key Tower, 127 Public Square )
Cleveland, Ohio 44114, )
)
and )
)
COOPER APARTMENTS NY, LLC )
c/o Millennia Housing Development, Ltd. )
4000 Key Tower, 127 Public Square )
Cleveland, Ohio 44114, )
)
and )
)
COOPER APARTMENTS NY MM, LLC )
c/o Millennia Housing Development, Ltd. )
4000 Key Tower, 127 Public Square )
Cleveland, Ohio 44114, )
)
and )
)
GENESEE TOWER NY, LLC )
c/o Millennia Housing Development, Ltd. )
4000 Key Tower, 127 Public Square )
Cleveland, Ohio 44114, )
)
and )
)
GENESEE TOWER NY MM, LLC )
c/o Millennia Housing Development, Ltd. )
4000 Key Tower, 127 Public Square )
Cleveland, Ohio 44114, )
)
and )
)
KNAMM APARTMENTS NY, LLC )
c/o Millennia Housing Development, Ltd. )
4000 Key Tower, 127 Public Square )
Cleveland, Ohio 44114, )
)
and )
)
KNAMM APARTMENTS NY MM, LLC )
c/o Millennia Housing Development, Ltd. )
4000 Key Tower, 127 Public Square )
Cleveland, Ohio 44114, )

and                                             )
                                                )
VILLAGE POINT NY, LLC                           )
c/o Millennia Housing Development, Ltd.          )
4000 Key Tower, 127 Public Square               )
Cleveland, Ohio 44114,                          )
                                                )
and                                             )
                                                )
VILLAGE POINT NY MM, LLC                        )
c/o Millennia Housing Development, Ltd.          )
4000 Key Tower, 127 Public Square               )
Cleveland, Ohio 44114,                          )
                                                )
and                                             )
                                                )
MILLENNIA HOUSING DEVELOPMENT, LTD.             )
4000 Key Tower, 127 Public Square               )
Cleveland, Ohio 44114,                          )
                                                )
and                                             )
                                                )
MILLENNIA HOUSING MANAGEMENT, LTD.              )
4000 Key Tower, 127 Public Square               )
Cleveland, Ohio 44114,                          )
                                                )
and                                             )
                                                )
FRANK T. SINITO                                 )
6736 Eagle Mills Road                           )
Willoughby, OH 44094,                           )
                                                )
              Defendants.                        )

Plaintiffs RIK IOF Millennia Buck Portfolio, LLC ("RIK"), Lobo Feroz, LLC ("Lobo"),

and Jonathon Grassi ("Grassi" and, collectively with RIK and Lobo, "Plaintiffs") bring this

Complaint against the following Defendants: Brandegee Garden NY, LLC and Brandegee Garden

NY MM, LLC (the "Brandegee Defendants"); Buck Apartments NY, LLC and Buck Apartments

NY MM, LLC (the "Buck Defendants"); Cooper Apartments NY, LLC and Cooper Apartments

NY MM, LLC (the "Cooper Defendants"); Genesee Tower NY, LLC and Genesee Tower NY

MM, LLC (the "Genesee Defendants"); Knamm Apartments NY, LLC and Knamm Apartments NY MM, LLC (the "Knamm Defendants"); Village Point NY, LLC and Village Point NY MM, LLC (the "Village Point Defendants"); Millennia Housing Development, Ltd. ("Millennia Housing Development"); Millennia Housing Management, Ltd. ("Millennia Housing Management"); and Frank T. Sinito ("Sinito"). The Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, the Village Point Defendants, Millennia Housing Development, Millennia Housing Management, and Sinito are referred to collectively in this Complaint as the "Defendants." Plaintiffs allege as follows:

## <u>OVERVIEW OF THE DISPUTE</u>

1.      Plaintiffs bring this lawsuit to remedy a series of breaches of contract and other conduct by Defendants that have caused them harm.

2.      This lawsuit centers around Plaintiffs' investments in six low-income housing complexes in and around Utica, New York, collectively referred to as the "Buck Portfolio."

3.      To understand the nature and context of Plaintiffs' claims, at the outset one must understand Defendants' background and organization, including Sinito's role in connection with the Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, the Village Point Defendants, Millennia Housing Development, and Millennia Housing Management.

4.      The Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, and the Village Point Defendants constitute twelve separate limited liability companies that correspond to six apartment complexes in the Buck Portfolio.

5.     The organizational structure for each of the six apartment complexes is the same. Each apartment complex is owned by a separate limited liability company, for which the membership interest of each is the same: (i) 49.9% of each owned by a corresponding "Managing Member LLC," (ii) RIK owns 24.9%, (iii) Lobo owns 20.2%; and (iv) Jonathon Grassi owns 5%. Each Managing Member LLC operates and manages its company that owns the apartment complex.

6.     By way of illustration, one of the six Buck Portfolio apartment projects is known as Brandegee Garden Apartments, which is owned by Brandegee Garden NY, LLC. The managing member of Brandegee Garden NY, LLC is Brandegee Garden NY MM, LLC (which owns 49.9% of Brandegee Garden NY, LLC); RIK owns 24.9%; Lobo owns 20.2%, and Jonathon Grassi owns 5%.

7.     That organizational structure is the same for all six apartment complexes in the Buck Portfolio.

8.     Upon information and belief, and as explained below, the Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, the Village Point Defendants, Millennia Housing Development, and Millennia Housing Management are part of The Millennia Companies, with its founder and CEO being Defendant Frank T. Sinito. (*See* https://themillenniacompanies.com/.)

9.     According to The Millennia Companies' website, The Millennia Companies include Defendant Millennia Housing Management, Defendant Millennia Housing Development, Millennia Housing Capital, Ltd., and Millennia Commercial Group, Ltd.

10.     A review of the website for each apartment complex in the Buck Portfolio reveals that Defendant Millennia Housing Management has been hired to manage each apartment complex.

11.     The aforementioned Millennia entities are collectively referred to throughout this Complaint as "Millennia."

12.     Millennia owns and operates low-income housing complexes across the country, but its network is crumbling as Millennia and Sinito are currently the subject of a federal criminal investigation, a debarment by the United States Department of Housing and Urban Development ("HUD"), as well as numerous other lawsuits and investigations.

13.     The RIK Members' allegations in this lawsuit fall into the following categories: (1) breach of contract claims, including based on Defendants' refusal to honor Put Right provisions set forth in the relevant Amended and Restated Operating Agreements, (2) breach of duty claims based on Defendants' failure to properly manage each apartment complex and fraudulent transfers of funds, (3) claims seeking the provision of financial information about each apartment complex in which Plaintiffs have ownership interests and the right to such information, (4) fraudulent transfers of embezzled funds by Sinito; and (5) a RICO claim based on Sinito and Millennia's pattern and practice of racketeering activity aimed at defrauding and embezzling from the RIK Members and other victims.

## THE PARTIES

A.     THE PLAINTIFFS

14.     RIK is an Ohio Limited Liability Company.

15.     RIK owns 24.9% of the membership interests in each of the limited liability companies that own the apartment complexes at issue in this lawsuit.

16.     Lobo is an Ohio Limited Liability Company.

17.     Lobo owns 20.2% of the membership interests in each of the limited liability companies that own the apartment complexes at issue in this lawsuit.

18.     Grassi is an individual who is a citizen and resident of Florida.

19.     Grassi owns 5% of the membership interests in each of the limited liability companies that own the apartment complexes at issue in this lawsuit.

B.     **THE DEFENDANTS**

*Brandegee Garden Apartments*

20.     On April 25, 2016, Defendant Brandegee Garden NY, LLC was formed.

21.     The original members of Defendant Brandegee Garden NY, LLC were Millennia Housing Capital, LTD. ("MHC") and Defendant Brandegee Garden NY MM, LLC.

22.     On December 29, 2016, the then-existing members of Defendant Brandegee Garden NY, LLC amended the operating agreement to provide for the withdrawal of MHC as a member and the addition of Plaintiffs as members.

23.     Defendant Brandegee Garden NY, LLC is a New York limited liability company with its principal place of business listed in Section 3.2 of its operating agreement as Millennia Housing Management, Ltd., 8111 Rockside Road, Suite #200, Cleveland, Ohio 44125.

24.     A true and accurate copy of the Brandegee Garden NY, LLC Amended and Restated Operating Agreement is attached hereto as Exhibit 1 and hereinafter referred to as the "Brandegee Operating Agreement."

25.     Defendant Brandegee Garden NY, LLC owns an apartment complex in Utica, New York, referred to as the Brandegee Garden Apartments. (*See* https://brandegeegarden.com/.)

26.     Defendant Brandegee Garden NY MM, LLC, is an Ohio limited liability company and is the managing member of Defendant Brandegee Garden NY, LLC.

27.     The Brandegee Operating Agreement lists the contact information for Defendant Brandegee Garden NY MM LLC as "Millennia Housing Development, Ltd., 8111 Rockside Road, #200, Attn.: Frank T. Sinito, Email: fsinito@mhmltd.com."

### Buck Apartments

28.     On April 25, 2016, Buck Apartments NY, LLC was formed.

29.     The original members of Defendant Buck Apartments NY, LLC were MHC and Defendant Buck Apartments NY MM, LLC.

30.     On December 29, 2016, the then-existing members of Buck Apartments NY, LLC amended the operating agreement to provide for the withdrawal of MHC as a member and the addition of Plaintiffs as members.

31.     Defendant Buck Apartments NY, LLC is a New York limited liability company with its principal place of business listed in Section 3.2 of its operating agreement as Millennia Housing Management, Ltd., 8111 Rockside Road, Suite #200, Cleveland, Ohio 44125.

32.     A true and accurate copy of the Buck Apartments NY, LLC Amended and Restated Operating Agreement is attached hereto as Exhibit 2 and hereinafter referred to as the "Buck Apartments Operating Agreement."

33.     Defendant Buck Apartments NY, LLC owns an apartment complex in Whitesboro, New York, referred to as the Mary D. Buck Apartments. (*See* https://themillenniacompanies.com/marydbuck/.)

34.     Defendant Buck Apartments NY MM, LLC, is an Ohio limited liability company and is the managing member of Defendant Buck Apartments NY, LLC.

35.    The Buck Apartments Operating Agreement lists the contact information for Defendant Buck Apartments NY MM LLC as "Millennia Housing Development, Ltd., 8111 Rockside Road, #200, Attn.: Frank T. Sinito, Email: fsinito@mhmltd.com."

*Cooper Apartments*

36.    On April 25, 2016, Defendant Cooper Apartments NY, LLC was formed.

37.    The original members of Defendant Cooper Apartments NY, LLC were MHC and Defendant Cooper Apartments NY MM, LLC.

38.    On December 29, 2016, the then-existing members of Defendant Cooper Apartments NY, LLC amended the operating agreement to provide for the withdrawal of MHC as a member and the addition of Plaintiffs as members.

39.    Defendant Cooper Apartments NY, LLC is a New York limited liability company with its principal place of business listed in Section 3.2 of its operating agreement as Millennia Housing Management, Ltd., 8111 Rockside Road, Suite #200, Cleveland, Ohio 44125.

40.    A true and accurate copy of the Cooper Apartments NY, LLC Amended and Restated Operating Agreement is attached hereto as Exhibit 3 and hereinafter referred to as the "Cooper Apartments Operating Agreement."

41.    Defendant Cooper Apartments NY, LLC owns an apartment complex in Utica, New York, referred to as the Lillian Y. Cooper Apartments. (*See* https://lilliancooper.com/.)

42.    Defendant Cooper Apartments NY MM, LLC, is an Ohio limited liability company and is the managing member of Defendant Cooper Apartments NY, LLC.

43.    The Cooper Apartments Operating Agreement lists the contact information for Defendant Cooper Apartments NY MM LLC as "Millennia Housing Development, Ltd., 8111 Rockside Road, #200, Attn.: Frank T. Sinito, Email: fsinito@mhmltd.com."

*Genesee Tower*

44.     On April 25, 2016, Defendant Genesee Tower NY, LLC was formed.

45.     The original members of Defendant Genesee Tower NY, LLC were MHC and Defendant Genesee Tower NY MM, LLC.

46.     On December 29, 2016, the then-existing members of Defendant Genesee Tower NY, LLC amended the operating agreement to provide for the withdrawal of MHC as a member and the addition of Plaintiffs as members.

47.     Defendant Genesee Tower NY, LLC is a New York limited liability company with its principal place of business listed in Section 3.2 of its operating agreement as Millennia Housing Management, Ltd., 8111 Rockside Road, Suite #200, Cleveland, Ohio 44125.

48.     A true and accurate copy of the Genesee Tower NY, LLC Amended and Restated Operating Agreement is attached hereto as Exhibit 4 and hereinafter referred to as the "Genesee Tower Operating Agreement."

49.     Genesee Tower NY, LLC owns an apartment complex in Utica, New York, referred to as Genesee Tower. (*See* https://geneseetower.com/.)

50.     Defendant Genesee Tower NY MM, LLC, is an Ohio limited liability company and is the managing member of Defendant Genesee Tower NY, LLC.

51.     The Genesee Tower Operating Agreement lists the contact information for Defendant Genesee Tower NY MM LLC as "Millennia Housing Development, Ltd., 8111 Rockside Road, #200, Attn.: Frank T. Sinito, Email: fsinito@mhmltd.com."

*Knamm Apartments*

52.     On April 25, 2016, Defendant Knamm Apartments NY, LLC was formed.

53.     The original members of Defendant Knamm Apartments NY, LLC were MHC and Defendant Knamm Apartments NY MM, LLC.

54.     On December 29, 2016, the then-existing members of Defendant Knamm Apartments NY, LLC amended the operating agreement to provide for the withdrawal of MHC as a member and the addition of Plaintiffs as members.

55.     Defendant Knamm Apartments NY, LLC is a New York limited liability company with its principal place of business listed in Section 3.2 of its operating agreement as Millennia Housing Management, Ltd., 8111 Rockside Road, Suite #200, Cleveland, Ohio 44125.

56.     A true and accurate copy of the Knamm Apartments NY, LLC Amended and Restated Operating Agreement is attached hereto as Exhibit 5 and hereinafter referred to as the "Knamm Apartments Operating Agreement."

57.     Defendant Knamm Apartments NY, LLC owns an apartment complex in Utica, New York, referred to as the Margaret Knamm Memorial. (*See* https://margaretknamm.com/.)

58.     Defendant Knamm Apartments NY MM, LLC, is an Ohio limited liability company and is the managing member of Defendant Knamm Apartments NY, LLC. The Knamm Apartments Operating Agreement lists the contact information for Defendant Knamm Apartments NY MM, LLC as "Millennia Housing Development, Ltd., 8111 Rockside Road, #200, Attn.: Frank T. Sinito, Email: fsinito@mhmltd.com."

***Village Point Apartments***

59.     On April 25, 2016, Defendant Village Point Apartments NY, LLC was formed.

60.     The original members of Defendant Village Point NY, LLC were MHC and Defendant Village Point NY MM, LLC.

61.     On December 29, 2016, the then-existing members of Defendant Village Point NY, LLC amended the operating agreement to provide for the withdrawal of MHC as a member and the addition of Plaintiffs as members.

62.     Defendant Village Point NY, LLC is a New York limited liability company with its principal place of business listed in Section 3.2 of its operating agreement as Millennia Housing Management, Ltd., 8111 Rockside Road, Suite #200, Cleveland, Ohio 44125.

63.     A true and accurate copy of the Village Point NY, LLC Amended and Restated Operating Agreement is attached hereto as Exhibit 6 and hereinafter referred to as the "Village Point Operating Agreement."

64.     Defendant Village Point NY, LLC owns an apartment complex in New Hartford, New York, referred to as the Village Point Apartments. (*See* https://villagepointapts.com/.)

65.     Defendant Village Point NY MM, LLC, is an Ohio limited liability company and is the managing member of Defendant Village Point NY, LLC.

66.     The Village Point Operating Agreement lists the contact information for Defendant Village Point NY MM LLC as "Millennia Housing Development, Ltd., 8111 Rockside Road, #200, Attn.: Frank T. Sinito, Email: fsinito@mhmltd.com."

***Millennia Housing Development and Millennia Housing Management***

67.     Defendant Millennia Housing Development is an Ohio limited liability company with its principal place of business located at 4000 Key Tower, 127 Public Square, Cleveland, Ohio 44114.

68.     Defendant Millennia Housing Management is an Ohio limited liability company with its principal place of business located at 4000 Key Tower, 127 Public Square, Cleveland, Ohio 44114.

69.     Upon information and belief, in 2017, Defendant Millennia Housing Development and Defendant Millennia Housing Management moved their offices to 4000 Key Tower, 127 Public Square, Cleveland, Ohio 44114.

70.     Upon information and belief, Defendant Sinito controls and manages Defendant Millennia Housing Development and Defendant Millennia Housing Management.

### Frank T. Sinito

71.     Sinito is the founder and CEO of The Millennia Companies, including Defendants Millennia Housing Management Development and Millennia Housing Management, which manage the apartment complexes at issue here.

72.     Defendant Frank T. Sinito is a citizen of Ohio.

## JURISDICTION AND VENUE

73.     This Court has original subject matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act.

74.     This Court can exercise supplemental jurisdiction over any and all state law claims pursuant to 28 U.S.C. § 1367 because all such claims are so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy. Indeed, Sinito's pattern and practice of embezzlement via wire fraud not only constitutes RICO violations, but also forms a basis for Plaintiffs' piercing the corporate veil, breach of contract, and fraudulent transfer claims as well.

13

75.     This Court has personal jurisdiction over Defendants because: (1) Defendants transacted business with Plaintiffs in this state, (2) Defendants caused injury to Plaintiffs in this state, (3) Plaintiffs' claims arise out of each Defendant's in-state conduct; (4) each Defendant maintains its principal place of business in Ohio, and (5) Frank Sinito is a citizen and resident of the State of Ohio.

76.     Further, personal jurisdiction is established here because: (1) Defendants are limited liability companies (and an Ohio resident in the case of Sinito) that have purposefully availed themselves of the privilege of conducting activities in this state by maintaining a principal place of business in Cleveland, Ohio and by entering into and breaching the Amended and Restated Operating Agreements with Ohio residents; (2) the causes of action arise from Defendants' activities in Ohio; and (3) Defendants' acts have a substantial connection with Ohio.

77.     Venue is proper because each of the Defendants resides in this judicial district (and in the state of Ohio), and also because this is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## BACKGROUND

78.     As described above, the Buck Portfolio is a collection of six apartment complexes owned and operated either directly or indirectly by Defendants.

79.     Upon information and belief, all of the subject apartment complexes provide low-income housing to tenants and are federally regulated, in part, by HUD.

80.     The addition of Plaintiffs as members of each of the entities that own the apartment complexes was a result of Plaintiffs' investment of over $5,000,000.00 in the Buck Portfolio.

81. As of December 29, 2016, as a result of the withdrawal of MHC and the addition of Plaintiffs, Plaintiffs collectively hold 50.1% of the membership interests in each entity that owns the apartment complexes.

82. Sinito signed each Amended and Restated Operating Agreement on behalf of the managing member entities that hold the minority interests in the companies that own the apartment complexes. In addition, each Amended and Restated Operating Agreement identifies him and Defendant Millennia Housing Development as the contact information for the managing member of those entities.

## THE AMENDED AND RESTATED OPERATING AGREEMENTS

83. As relevant to this Complaint, each of the Amended and Restated Operating Agreements for each of the Company LLCs is substantively identical.

84. Section 2.1 of each Amended and Restated Operating Agreement provides that the company that owns the apartment complexes at issue in this lawsuit "is an entity separate and apart from its Members[.]"

85. Each Amended and Restated Operating Agreement provides that the Amended and Restated Operating Agreement is governed by the laws of the State of New York.

86. Each Amended and Restated Operating Agreement also provides that members have access to the Company's books and records:

> The Members shall be entitled to have the Company books kept at the principal place of business of the Company and at all times, during reasonable business hours, shall be entitled to inspect and copy any of them and have on demand true and full information of all things affecting the Company and a formal accounting of Company affairs whenever circumstances render it just and reasonable. In addition, within forty-five (45) days after receipt of written request therefor, the Company shall provide any Member with the most recent quarterly financial reports of the Company.

87.    Each Amended and Restated Operating Agreement contains an identical "Put Rights" provision, which provides as follows:

9.3    Put Rights.

(a)    In the event that the Company has not sold or refinanced the Project on or before the third anniversary of the date hereof then the RIK Members can elect at any time to have the Company purchase all of the Interests then owned by the RIK Members and any of their Permitted Transferees. The RIK Members shall exercise their right under this Section 9.3 by giving written notice (the "Put Notice") to the Company. The Put Notice shall specify the date of closing, which shall be not earlier than ninety (90) days after the date of the Put Notice, and the purchase price of the Interests subject to this Section 9.3 which shall be determined as provided in Section 9.3(b) hereof.

(b)    The purchase price for the Interests of the RIK Members in connection with this Section 9.3 shall be the Preferred Equity Amount for the RIK Member, the Grassi Member, and the Lobo Member Interests. In the event that the Company objects to the Preferred Equity Amount set forth in the Put Notice, the Company shall notify the RIK Members of such objection in writing within ten (10) days of receipt of the Put Notice. If the parties are unable to agree on the Preferred Equity Amount then the RIK Members and the Company shall within five (5) days of such objection notice select an independent appraiser to make the determination of the fair market value of the property based on the criteria set forth above. The determination of the appraiser shall be final and binding on the parties hereto. Notwithstanding the foregoing, if the fair market value as determined by the appraiser is less than an amount that will cause the RIK Members to realize an amount equal to the greater of (i) a fifteen percent (15%) Internal Rate of Return on the RIK Members investment in the Company, and (B) an amount that will cause the RIK Members to realize a Multiple of Money of 1.4 (the "Minimum Amount") then the Preferred Equity Amount shall be the Minimum Amount. The fees and expenses of the appraiser shall be shared equally by the Company and the RIK Members.

(c)    On the closing date, subject to the consent of the lender of the Senior Loan, the RIK Members and their Permitted Transferees shall convey, transfer and assign to the Company (by assignment and such other instruments of transfer as shall reasonably be requested by the Company) all of their Interests, free and clear of any liens, encumbrances or claims of any nature whatsoever and shall, to the extent requested by the Company, cooperate to effect a smooth and efficient continuation of the affairs of the Company. If the Company fails to comply with the terms of this Section 9.3 or close the purchase of the Interests of RIK Members and their Permitted Transferees in accordance with the terms hereof then the Company shall be in default hereunder and the RIK Members shall have the authority to market

and sell the Project at the fair market value. The Company and the Managing Member will in good faith, and the Managing Member will cause its Affiliates, cooperate with the RIK Members in connection with and will facilitate the sale of the Project.

88.     As the language of each Put Right dictates, if Plaintiffs exercise the Put Right option, then the companies that own the apartment complex at issue must purchase Plaintiffs' interests in those companies on a specified closing date not earlier than 90 days after the date of the Put Notice.

89.     The Put Right provisions also state that the purchase price for Plaintiffs' interests is a Preferred Equity Amount, and outline a specific formula for setting that purchase price.

90.     The notice provision of each of the Amended and Restated Operating Agreements is identical and provides as follows:

> 13.5    Notices. Notices, consents, approvals and disapprovals required or permitted by this Agreement to be given ("Notices") to Members or to the Company shall be deemed to have been given when (a) personally delivered, or (b) sent by overnight or same day courier, or (c) sent by email. Notices shall be deemed received and effective (i) if sent as described in clause (c) on the date and time of transmission, provided that (x) such email is sent during customary business hours in Cleveland, Ohio, and (y) such Notice is also sent by one of the other means described above, and (ii) if sent as described in clauses (a) or (b), on the date actually received. Notices must be addressed as set forth in Appendix A of this Agreement, unless a notice of change of address has previously been given in writing, in which case such notice shall be addressed to the address set forth in such notice of change of address.

## PLAINTIFFS' EXERCISE THEIR PUT RIGHTS

91.     On July 22, 2024, Plaintiffs emailed Defendant Sinito; James Wells, Executive Vice President of Defendant Millennia Housing Development; and Renee Weiss, General Counsel of Defendant Millennia Housing Management, and notified them that Plaintiffs were exercising their Put Rights under each of the Amended and Restated Operating Agreements. The email provided in pertinent part:

Per each of the Operating Agreements for Brandegee Gardens NY LLC, Buck Apartments NY LLC, Cooper Apartments NY LLC, Genesee Towers NY LLC, Knamm Apartments NY LLC, and Village Point NY LLC (each a "Company" and collectively the "Companies"), the RIK Member, Lobo Member, and Grassi Member (collectively, the "RIK Members") have a put option (the "Put Option") that requires each Company to purchase the RIK Members' interests in such Company for the "Preferred Equity Amount." The Preferred Equity Amount is the greater of FMV, a 15% IRR or a 1.4x MOIC after year 3 of the hold period.

All conditions to the RIK Members' exercise of the Put Option under the Companies' Operating Agreements have been satisfied. **<u>This e-mail constitutes written notice given pursuant to Section 9.3 of each Operating Agreement that the RIK Members election to exercise the Put Option with respect to each Company</u>**. Our determination of the Preferred Equity Amount for the aggregate RIK Members' interest across all six Companies is set forth below. In accordance with Section 9.3 of each Operating Agreement, closing on the Put Option will occur on October 21, 2024, at which time we demand payment of the aggregate Preferred Equity Amount as set forth below. We reserve the right to pursue all rights and remedies under the Operating Agreement or otherwise upon failure to pay the Preferred Equity Amount when required. A physical copy of this notice is being delivered concurrently by courier in accordance with Section 13.5 of each Operating Agreement.

(7/22/2024 Put Notice email, attached as Exhibit 7 (emphasis in original).)

92.     The 7/22/2024 Put Notice email also identified the total Preferred Equity amount (i.e., the Put Purchase Price) as $12,945,000. (*Id*.)

93.     On August 1, 2024, Plaintiffs hand-delivered a hard copy of the Put Notice email to Millennia's offices.

94.     The Put Notice provisions in the Amended and Restated Operating Agreement provided Defendants with a ten day period to object in writing to the Preferred Equity Amount set forth in the Put Notices.

95.     At no time did Defendants ever object to the Put Notices in any way.

96.     In an email dated October 11, 2024, Plaintiffs referenced their previously exercised Put Rights and the purchase price for the Put Rights, and indicated that they had learned of an offer to purchase the entire Buck Portfolio for $23,500,000. (10/11/2024 Email, attached as Exhibit 8.)

97.     Under the express terms of the Amended and Restated Operating Agreements, the deadline for Defendants to buy Plaintiffs' Interests in each of the Company LLCs was October 21, 2024.

98.     Nonetheless, by email dated October 20, 2024, Sinito informed Plaintiffs that Defendants were refusing to pay the purchase price to satisfy Plaintiffs' Put Rights. (Ex. 8.)

99.     To date, Defendants have failed and/or refused to satisfy Plaintiffs' Put Rights.

## DEFENDANTS' ADDITIONAL MALFEASANCE

100.    Sinito and Millennia have been debarred from HUD. That sanction, effectively a death penalty for entities like Millennia that participate in government contracts, prohibits Millennia-affiliated entities and Sinito from entering into business with any federal government agencies, including HUD, for five years.

101.    According to a news article, HUD has accused Defendant Millennia Housing Management of "financial mismanagement of tenant security deposit accounts and taxpayer funds that provide housing assistance, along with not maintaining property conditions." (*See* 3/25/2024 article available on cleveland.com, titled: "HUD cracks down on Cleveland-based Millennia Housing Management following an explosion and poor conditions. (A copy of that article is attached as Exhibit 9.)

102.    Information gleaned from the HUD investigation raises disturbing questions about Sinito's and Millennia's management of HUD-funded apartment projects like the Buck Portfolio.

103.    A Notice of Suspension and Proposed Debarment of Frank T. Sinito and Defendant Millennia Housing Management indicates security deposits were materially underfunded, and a significant number of Millennia properties participated in unauthorized distributions. (*See* Exhibit 10 at p. 2-3.)

104.    In addition, on October 23, 2024, federal agents executed a search warrant at Defendant Sinito's home as part of a federal investigation of Sinito and Millennia by HUD.

105.    These revelations regarding Sinito and Millennia are cause for concern, particularly in light of the fact that Defendant Sinito, including through the other Defendants, represented to Plaintiffs that they had the power to act as managing member of the apartment complexes at issue here and to achieve the goals of the Amended and Restated Operating Agreements.

106.    Throughout this time, Defendants have refused to be transparent and provide financial information as mandated by the Amended and Restated Operating Agreements.

107.    Plaintiffs have also learned that Sinito and entities with which he is affiliated have made several improper transfers of funds to Sinito and/or Sinito's entities out of the funds of the entities that own the apartment complexes at issue in this lawsuit.

108.    Specifically, Plaintiffs have discovered at least 12 unauthorized disbursements of funds to Sinito himself and various entities affiliated with Sinito and Millennia, other than the other Defendants in this lawsuit, in a total amount exceeding $750,000 over at least the last four years.

109.    Plaintiffs also have learned of Defendants' rampant mismanagement of the Buck Portfolio apartments.

110.    By way of example only, a number of news outlets from the Utica, New York area report that residents of the Buck Portfolio apartments are living in "squalor" which has triggered lawsuits and investigations regarding the Buck Portfolio apartments.

111.    Finally, recent media reporting has identified a potential buyer of the Buck Portfolio, which will impact Plaintiffs' interests in the portfolio. (*See*, *e.g.*, https://www.wktv.com/news/local/in-pursuit-of-sale-new-hope-for-local-millennia-tenants/article_ba029214-e40d-11ef-95ae-6b8974a1469d.html; https://www.wktv.com/news/local/local-buyer-for-millennia-properties/article_5626302c-a144-11ef-ae6e-ff37fb597204.html; https://www.wktv.com/news/local/millennia-tenants-meet-with-attorney-over-living-conditions/article_b793f9a4-d90f-11ef-bf8a-efd517508e82.html.)

## COUNT I
### (Piercing the Corporate Veil)

112.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

113.    The Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, and the Village Point Defendants are controlled by Defendants Millennia Housing Development, Millennia Housing Management, and Sinito.

114.    Defendants Millennia Housing Development, Millennia Housing Management, and Sinito exert such dominion and control over the Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, and the Village Point Defendants, that those entities have no separate mind, will, or existence of their own.

115.    Defendants Millennia Housing Development, Millennia Housing Management, and Sinito's dominion and control over the Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, and the Village Point Defendants,

has been, and continues to be, exercised in a manner to commit harmful, unfair, unjust, inequitable, wrongful, and fraudulent acts against Plaintiffs, including those entities' breaches of contract, fraud, and fraudulent transfers, including but not limited to continual acts of embezzlement (as set forth above, and below in Counts II-XIV and Counts XVIII-XIX, incorporated by reference).

116. The Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, and the Village Point Defendants are and, at all relevant times have been, undercapitalized and unable to satisfy the financial obligations that they undertook, including those contractual obligations owed to Plaintiffs.

117. The Brandegee Defendants', the Buck Defendants', the Cooper Defendants', the Genesee Defendants', the Knamm Defendants', and the Village Point Defendants' inability to satisfy their contractual obligations, including to Plaintiffs, is a direct result of Defendants Millennia Housing Development, Millennia Housing Management, and Sinito's control and dominion over those entities, including but not limited to Defendants Millennia Housing Development, Millennia Housing Management, and Sinito directing those entities to make financial transfers directly to Sinito and to other entities he controls, acts which constitute embezzlement via wire fraud.

118. As a direct and proximate result of Defendants Millennia Housing Development, Millennia Housing Management, and Sinito's control over the Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, and the Village Point Defendants, Plaintiffs have sustained financial harm, as set forth in more detail throughout this Complaint.

119.    Defendants owe Plaintiffs an amount in excess of $75,000, with the exact amount to be proven at trial. Any alleged separate corporate existence of the Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, and the Village Point Defendants should be disregarded in equity and Plaintiffs should be permitted to recover all damages and liabilities otherwise attributable to those entities directly from Defendants Millennia Housing Development, Millennia Housing Management, and Sinito.

## COUNT II
### (Breach of Contract – Brandegee Garden NY, LLC)

120.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

121.    On December 29, 2016, Plaintiffs became members of Defendant Brandegee Garden NY, LLC by investing in that entity and signing the Brandegee Operating Agreement.

122.    The Brandegee Operating Agreement affords Plaintiffs a Put Right which, upon notice, obligates Defendant Brandegee Garden NY, LLC to purchase all of the interests owned by Plaintiffs pursuant to a formula set forth in section 9.3 of the Brandegee Operating Agreement.

123.    Defendant Brandegee Garden NY, LLC has breached the Brandegee Operating Agreement by failing to honor the Put Right and failing to purchase Plaintiffs' interests.

124.    Plaintiffs have performed all of their obligations under the Brandegee Operating Agreement in all material respects.

125.    Plaintiffs have suffered damages as a direct and proximate result of Defendant Brandegee Garden NY, LLC's breach of the Put Right in an amount in excess of $75,000, with the exact amount to be proven at trial.

## COUNT III
### (Breach of Contract – Buck Apartments NY, LLC)

126.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

127.    On December 29, 2016, Plaintiffs became members of Defendant Buck Apartments NY, LLC by investing in that entity and signing the Buck Apartments Operating Agreement.

128.    The Brandegee Operating Agreement affords Plaintiffs a Put Right which, upon notice, obligates Defendant Buck Apartments NY, LLC to purchase all of the interests owned by Plaintiffs pursuant to a formula set forth in section 9.3 of the Buck Apartments Operating Agreement.

129.    Defendant Buck Apartments NY, LLC has breached the Buck Apartments Operating Agreement by failing to honor the Put Right and failing to purchase Plaintiffs' interests.

130.    Plaintiffs have performed all of their obligations under the Buck Apartments Operating Agreement in all material respects.

131.    Plaintiffs have suffered damages as a direct and proximate result of Defendant Buck Apartments NY, LLC's breach of the Put Right in an amount in excess of $75,000, with the exact amount to be proven at trial.

## COUNT IV
### (Breach of Contract – Cooper Apartments NY, LLC)

132.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

133.    On December 29, 2016, Plaintiffs became members of Defendant Cooper Apartments NY, LLC by investing in that entity and signing the Cooper Apartments Operating Agreement.

134.    The Cooper Apartments Operating Agreement affords Plaintiffs a Put Right which, upon notice, obligates Defendant Cooper Apartments NY, LLC to purchase all of the interests owned by Plaintiffs pursuant to a formula set forth in section 9.3 of the Cooper Apartments Operating Agreement.

135.    Defendant Cooper Apartments NY, LLC has breached the Cooper Apartments Operating Agreement by failing to honor the Put Right and failing to purchase Plaintiffs' interests.

136.    Plaintiffs have performed all of their obligations under the Cooper Apartments Operating Agreement in all material respects.

137.    Plaintiffs have suffered damages as a direct and proximate result of Defendant Cooper Apartments NY, LLC's breach of the Put Right in an amount in excess of $75,000, with the exact amount to be proven at trial.

### COUNT V
**(Breach of Contract – Genesee Tower NY, LLC)**

138.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

139.    On December 29, 2016, Plaintiffs became members of Defendant Genesee Tower NY, LLC by investing in that entity and signing the Genesee Tower Operating Agreement.

140.    The Genesee Tower Operating Agreement affords Plaintiffs a Put Right which, upon notice, obligates Defendant Genesee Tower NY, LLC to purchase all of the interests owned by Plaintiffs pursuant to a formula set forth in section 9.3 of the Genesee Tower Operating Agreement.

141.    Defendant Genesee Tower NY, LLC has breached the Genesee Tower Operating Agreement by failing to honor the Put Right and failing to purchase Plaintiffs' interests.

142.    Plaintiffs have performed all of their obligations under the Genesee Tower Operating Agreement in all material respects.

143.    Plaintiffs have suffered damages as a direct and proximate result of Defendant Genesee Tower NY, LLC's breach of the Put Right in an amount in excess of $75,000, with the exact amount to be proven at trial.

## COUNT VI
### (Breach of Contract – Knamm Apartments NY, LLC)

144.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

145.    On December 29, 2016, Plaintiffs became members of Defendant Knamm Apartments NY, LLC by investing in that entity and signing the Knamm Apartments Operating Agreement.

146.    The Knamm Apartments Operating Agreement affords Plaintiffs a Put Right which, upon notice, obligates Defendant Knamm Apartments NY, LLC to purchase all of the interests owned by Plaintiffs pursuant to a formula set forth in section 9.3 of the Knamm Apartments Operating Agreement.

147.    Defendant Knamm Apartments NY, LLC has breached the Knamm Apartments Operating Agreement by failing to honor the Put Right and failing to purchase Plaintiffs' interests.

148.    Plaintiffs have performed all of their obligations under the Knamm Apartments Operating Agreement in all material respects.

149.    Plaintiffs have suffered damages as a direct and proximate result of Defendant Knamm Apartments NY, LLC's breach of the Put Right in an amount in excess of $75,000, with the exact amount to be proven at trial.

## COUNT VII
### (Breach of Contract – Village Point NY, LLC)

150.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

151.    On December 29, 2016, Plaintiffs became members of Defendant Village Point NY, LLC by investing in that entity and signing the Village Point Operating Agreement.

152.     The Village Point Operating Agreement affords Plaintiffs a Put Right which, upon notice, obligates Defendant Village Point NY, LLC to purchase all of the interests owned by Plaintiffs pursuant to a formula set forth in section 9.3 of the Village Point Operating Agreement.

153.     Defendant Village Point NY, LLC has breached the Village Point Operating Agreement by failing to honor the Put Right and failing to purchase Plaintiffs' interests.

154.     Plaintiffs have performed all of their obligations under the Village Point Operating Agreement in all material respects.

155.     Plaintiffs have suffered damages as a direct and proximate result of Defendant Village Point NY, LLC's breach of the Put Right in an amount in excess of $75,000, with the exact amount to be proven at trial.

### COUNT VIII
**(Tortious Interference – Millennia Housing Development, Millennia Housing Management, and Sinito)**

156.     Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

157.     The Amended and Restated Operating Agreements are binding and enforceable contracts between the managing members of the various entities and Plaintiffs.

158.     In the Amended and Restated Operating Agreements, the entities that own the apartment complexes at issue identified Defendant Millennia Housing Management as their "principal office." Accordingly, Defendant Millennia Housing Management had knowledge of the Amended and Restated Operating Agreements.

159.     In the Amended and Restated Operating Agreements, the entities that own the apartment complexes at issue identified Defendant Millennia Development as their agent for service of process. Accordingly, Defendant Millennia Housing Development had knowledge of the Amended and Restated Operating Agreement.

160.    Defendant Sinito signed each Amended and Restated Operating Agreements and is identified as the point of contact for the managing members of the entities that own the apartment complexes at issue. Accordingly, Defendant Sinito had knowledge of the Amended and Restated Operating Agreements.

161.    Defendants Millennia Housing Development, Millennia Housing Management, and Sinito intentionally procured the remaining Defendants' breaches of the Amended and Restated Operating Agreements without justification by preventing those Defendants from fulfilling their obligations under Section 9.3 of the respective Amended and Restated Operating Agreements, which granted Plaintiffs a Put Right.

162.    Specifically, on July 22, 2024, Plaintiffs emailed Defendant Sinito; James Wells, Executive Vice President of Defendant Millennia Housing Development; and Renee Weiss, General Counsel of Defendant Millennia Housing Management, and notified them that Plaintiffs were exercising their Put Rights.

163.    On October 20, 2024, Defendant Sinito responded to the Put Notice and informed Plaintiffs that Defendants were refusing to honor the Put Rights.

164.    Plaintiffs have suffered damages as a direct and proximate result of Defendants Millennia Housing Development, Millennia Housing Management, and Sinito's tortious interference in an amount in excess of $75,000 with the exact amount to be proven at trial.

165.    Further, Plaintiffs are entitled to an award of punitive damages and attorneys' fees as a result Defendants' tortious interference, as Defendants' conduct was intentional and the result of malice.

## COUNT IX
**(Breach of Fiduciary Duty – Brandegee Garden Apartments NY MM, LLC)**

166.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

167.    As the managing member of Brandegee Garden Apartments NY, LLC, Defendant Brandegee Garden NY MM, LLC owes a fiduciary duty to Plaintiffs as the majority members of Defendant Brandegee Garden NY, LLC.

168.    Defendant Brandegee Garden NY MM, LLC has a duty to perform its duties as managing member in good faith, to refrain from self-dealing, to follow the provisions of the Brandegee Operating Agreement and to act in the best interests of Brandegee Garden NY, LLC and its members.

169.    Since the execution of the Brandegee Operating Agreement, Defendant Brandegee Garden NY MM, LLC has failed to fulfill its duties and has consistently acted in bad faith by allowing Brandegee Garden Apartments to deteriorate to the point where the residents are living in squalor and lawsuits and investigations are being initiated regarding the management of the apartment buildings.

170.    Additionally, Defendant Brandegee Garden NY MM, LLC has engaged in self-dealing by making or causing to be made a series of transfers of funds to Defendant Sinito or other entities with which he is affiliated out of the funds of Brandegee Garden NY, LLC.

171.    These actions and inactions of Defendant Brandegee Garden NY MM, LLC have resulted in direct monetary losses to Plaintiffs and have decreased the value of Brandegee Garden Apartments and Plaintiffs' interests in the Brandegee Garden Apartments.

172.     The breaches of fiduciary duties by Defendant Brandegee Garden NY MM, LLC are a direct and proximate cause of damages suffered by Plaintiffs in excess of $75,000, with the exact amount to be proven at trial.

173.     Further, Plaintiffs are entitled to an award of punitive damages and attorney fees due to Defendant Brandegee Garden NY MM, LLC's numerous breaches of their fiduciary duties and intentional misconduct.

## COUNT X
### (Breach of Fiduciary Duty – Buck Apartments NY MM, LLC)

174.     Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

175.     As the managing member of Buck Apartments NY, LLC, Defendant Buck NY MM, LLC owes a fiduciary duty to Plaintiffs as the majority members of Defendant Buck NY, LLC.

176.     Defendant Buck NY MM, LLC has a duty to perform its duties as managing member in good faith, to refrain from self-dealing, to follow the provisions of the Buck Operating Agreement and to act in the best interests of Buck NY, LLC and its members.

177.     Since the execution of the Buck Operating Agreement, Defendant Buck NY MM, LLC has failed to fulfill its duties and has consistently acted in bad faith by allowing the Mary D. Buck Apartments to deteriorate to the point where the residents are living in squalor and lawsuits and investigations are being initiated regarding the management of the apartment buildings.

178.     Additionally, Defendant Buck NY MM, LLC has engaged in self-dealing by making or causing to be made a series of transfers of funds to Defendant Sinito or other entities with which he is affiliated out of the funds of Buck NY, LLC.

179.    These actions and inactions of Buck NY MM, LLC have resulted in direct monetary losses to Plaintiffs and have decreased the value of the Mary D. Buck Apartments and Plaintiffs' interests in the Mary D. Buck Apartments.

180.    The breaches of fiduciary duties by Defendant Buck NY MM, LLC are a direct and proximate cause of damages suffered by Plaintiffs in excess of $75,000, with the exact amount to be proven at trial.

181.    Further, Plaintiffs are entitled to an award of punitive damages and attorney fees due to Defendant Buck NY MM, LLC's numerous breaches of their fiduciary duties and intentional misconduct.

### COUNT XI
### (Breach of Fiduciary Duty – Cooper Apartments NY MM, LLC)

182.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

183.    As the managing member of Cooper Apartments NY, LLC, Defendant Cooper Apartments NY MM, LLC owes a fiduciary duty to Plaintiffs as the majority members of Defendant Cooper Apartments NY, LLC.

184.    Defendant Cooper Apartments NY MM, LLC has a duty to perform its duties as managing member in good faith, to refrain from self-dealing, to follow the provisions of the Cooper Apartments Operating Agreement and to act in the best interests of Cooper Apartments NY, LLC and its members.

185.    Since the execution of the Cooper Apartments Operating Agreement, Defendant Cooper Apartments NY MM, LLC has failed to fulfill its duties and has consistently acted in bad faith by allowing the Lillian Y. Cooper Apartments to deteriorate to the point where the residents

are living in squalor and lawsuits and investigations are being initiated regarding the management of the apartment buildings.

186. Additionally, Defendant Cooper Apartments NY MM, LLC has engaged in self-dealing by making or causing to be made a series of transfers of funds to Defendant Sinito or other entities with which he is affiliated out of the funds of Cooper Apartments NY, LLC.

187. These actions and inactions of Cooper Apartments NY MM, LLC have resulted in direct monetary losses to Plaintiffs and have decreased the value of the Lillian Y. Cooper Apartments and Plaintiffs' interests in the Lillian Y. Cooper Apartments.

188. The breaches of fiduciary duties by Defendant Cooper Apartments NY MM, LLC are a direct and proximate cause of damages suffered by Plaintiffs in excess of $75,000, with the exact amount to be proven at trial.

189. Further, Plaintiffs are entitled to an award of punitive damages and attorney fees due to Defendant Cooper Apartments NY MM, LLC's numerous breaches of their fiduciary duties and intentional misconduct.

## <u>COUNT XII</u>
### (Breach of Fiduciary Duty – Genesee Tower NY MM, LLC)

190. Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

191. As the managing member of Genesee Tower NY, LLC, Defendant Genesee Tower NY MM, LLC owes a fiduciary duty to Plaintiffs as the majority members of Defendant Genesee Tower NY, LLC.

192. Defendant Genesee Tower NY MM, LLC has a duty to perform its duties as managing member in good faith, to refrain from self-dealing, to follow the provisions of the

Genesee Tower Operating Agreement and to act in the best interests of Genesee Tower NY, LLC and its members.

193. Since the execution of the Genesee Tower Operating Agreement, Defendant Genesee Tower NY MM, LLC has failed to fulfill its duties and has consistently acted in bad faith by allowing Genesee Tower to deteriorate to the point where the residents are living in squalor and lawsuits and investigations are being initiated regarding the management of the apartment buildings.

194. Additionally, Defendant Genesee Tower NY MM, LLC has engaged in self-dealing by making or causing to be made a series of transfers of funds to Defendant Sinito or other entities with which he is affiliated out of the funds of Genesee Tower NY, LLC.

195. These actions and inactions of Genesee Tower NY MM, LLC have resulted in direct monetary losses to Plaintiffs and have decreased the value of Genesee Tower and Plaintiffs' interests in Genesee Tower.

196. The breaches of fiduciary duties by Defendant Genesee Tower NY MM, LLC are a direct and proximate cause of damages suffered by Plaintiffs in excess of $75,000, with the exact amount to be proven at trial.

197. Further, Plaintiffs are entitled to an award of punitive damages and attorney fees due to Defendant Genesee Tower NY MM, LLC's numerous breaches of their fiduciary duties and intentional misconduct.

## COUNT XIII
### (Breach of Fiduciary Duty – Knamm Apartments NY MM, LLC)

198. Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

199.   As the managing member of Knamm Apartments NY, LLC, Defendant Knamm Apartments NY MM, LLC owes a fiduciary duty to Plaintiffs as the majority members of Defendant Knamm Apartments NY, LLC.

200.   Defendant Knamm Apartments NY MM, LLC has a duty to perform its duties as managing member in good faith, to refrain from self-dealing, to follow the provisions of the Knamm Apartments Operating Agreement and to act in the best interests of Knamm Apartments NY, LLC and its members.

201.   Since the execution of the Knamm Apartments Operating Agreement, Defendant Knamm Apartments NY MM, LLC has failed to fulfill its duties and has consistently acted in bad faith by allowing the Margaret Knamm Memorial to deteriorate to the point where the residents are living in squalor and lawsuits and investigations are being initiated regarding the management of the apartment buildings.

202.   Additionally, Defendant Knamm Apartments NY MM, LLC has engaged in self-dealing by making or causing to be made a series of transfers of funds to Defendant Sinito or other entities with which he is affiliated out of the funds of Knamm Apartments NY, LLC.

203.   These actions and inactions of Knamm Apartments NY MM, LLC have resulted in direct monetary losses to Plaintiffs and have decreased the value of the Margaret Knamm Memorial and Plaintiffs' interests in the Margaret Knamm Memorial.

204.   The breaches of fiduciary duties by Defendant Knamm Apartments NY MM, LLC are a direct and proximate cause of damages suffered by Plaintiffs in excess of $75,000, with the exact amount to be proven at trial.

205.    Further, Plaintiffs are entitled to an award of punitive damages and attorney fees due to Defendant Knamm Apartments NY MM, LLC's numerous breaches of their fiduciary duties and intentional misconduct.

<u>COUNT XIV</u>
**(Breach of Fiduciary Duty – Village Point Apartments NY MM, LLC)**

206.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

207.    As the managing member of Village Point NY, LLC, Defendant Village Point NY MM, LLC owes a fiduciary duty to Plaintiffs as the majority members of Defendant Village Point NY, LLC.

208.    Defendant Village Point NY MM, LLC has a duty to perform its duties as managing member in good faith, to refrain from self-dealing, to follow the provisions of the Village Point Operating Agreement and to act in the best interests of Village Point NY, LLC and its members.

209.    Since the execution of the Village Point Operating Agreement, Defendant Village Point NY MM, LLC has failed to fulfill its duties and has consistently acted in bad faith by allowing the Village Point Apartments to deteriorate to the point where the residents are living in squalor and lawsuits and investigations are being initiated regarding the management of the apartment buildings.

210.    Additionally, Defendant Village Point NY MM, LLC has engaged in self-dealing by making or causing to be made a series of transfers of funds to Defendant Sinito or other entities with which he is affiliated out of the funds of Village Point NY, LLC.

211.    These actions and inactions of Village Point NY MM, LLC have resulted in direct monetary losses to Plaintiffs and have decreased the value of the Village Point Apartments and Plaintiffs' interests in the Village Point Apartments.

212. The breaches of fiduciary duties by Defendant Village Point NY MM, LLC are a direct and proximate cause of damages suffered by Plaintiffs in excess of $75,000, with the exact amount to be proven at trial.

213. Further, Plaintiffs are entitled to an award of punitive damages and attorney fees due to Defendant Village Point NY MM, LLC's numerous breaches of their fiduciary duties and intentional misconduct.

**COUNT XV**
**(Declaratory Judgment – All Defendants)**

214. Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

215. Plaintiffs bring this Count pursuant to 28 U.S.C. § 2201(a).

216. Plaintiffs exercised their contractual Put Rights as set forth in the various Amended and Restated Operating Agreements.

217. Defendants have not honored the Put Rights and they have informed Plaintiffs that they do not intend to honor the Put Rights.

218. As such, there is an actual controversy between Plaintiffs and Defendants with respect to the parties' respective rights under each of the Amended and Restated Operating Agreements.

219. Specifically, there is an actual controversy between Plaintiffs and Defendants regarding whether Defendants are under a present obligation to honor the Put Rights.

220. Plaintiffs contend that Defendants are under a present obligation to honor the Put Rights.

221. Defendants contend that they are not under a present obligation to honor the Put Rights.

222.    Accordingly, Plaintiffs request a declaratory judgment stating that Defendants are under a present obligation to honor Plaintiffs' Put Rights.

223.    Such a declaration will conclusively establish the rights and legal relations of the parties.

224.    Plaintiffs seek an expedited hearing on its request for Declaratory Judgment as soon as possible pursuant to Rule 57 of the Federal Rules of Civil Procedure, and will be filing a separate motion seeking that relief.

<u>COUNT XVI</u>
**(Declaratory Judgment – All Defendants)**

225.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

226.    Plaintiffs bring this Count pursuant to 28 U.S.C. § 2201(a).

227.    Plaintiffs exercised their contractual Put Rights as set forth in the various Amended and Restated Operating Agreements.

228.    Plaintiffs have since learned of a potential sale of the Buck Portfolio.

229.    In correspondence with Defendants and Millennia, Plaintiffs have been informed that Defendants do not intend to honor the Put Rights before any proceeds of the sale of the Buck Portfolio would be distributed.

230.    As such, there is an actual controversy between Plaintiffs and Defendants with respect to the parties' respective rights under each of the Amended and Restated Operating Agreements.

231.    Plaintiffs contend that each of the Amended and Restated Operating Agreements mandate that Plaintiffs' Put Rights be satisfied before any proceeds of the sale of the Buck Portfolio are distributed to any members of the Company LLCs.

232.     Defendants contend that the Amended and Restated Operating Agreements permit the distribution of proceeds of any sale of the Buck Portfolio regardless of whether Plaintiffs' Put Rights have been or will be satisfied.

233.     Accordingly, Plaintiffs request a declaratory judgment ordering that the Put Rights be paid in full before any proceeds of any sale of the Buck Portfolio are distributed.

234.     Such a declaration will conclusively establish the rights and legal relations of the parties.

235.     Plaintiffs seek an expedited hearing on its request for Declaratory Judgment as soon as possible pursuant to Rule 57 of the Federal Rules of Civil Procedure, and will be filing a separate motion seeking that relief.

### COUNT XVII
**(Accounting – the Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, and the Village Point Defendants)**

236.     Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

237.     Plaintiffs are unable to protect or fully and meaningfully assert their rights because the Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, and the Village Point Defendants have been and continue to be in total control of the finances of the entities that own the apartment complexes at issue in this lawsuit.

238.     The exact amount of Plaintiffs' damages that resulted and/or may have resulted from Defendants' conduct cannot be determined fully without an accounting, because the information necessary to determine that amount is within the exclusive knowledge, possession, and control of the Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, and the Village Point Defendants, each of which

has failed to provide Plaintiffs with full and accurate books and records as required by the Amended and Restated Operating Agreements.

239.     Plaintiffs are entitled to an accounting of the books and records of each Company LLC.

## **COUNT XVIII**
### **(Fraudulent Transfer – All Defendants)**

240.     Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim herein.

241.     Defendants have made or caused to be made a series of transfers of funds to Defendant Sinito or other entities with which he is affiliated out of the funds of the entities that own the apartment complexes at issue in this lawsuit, and those transfers have been made with an actual intent to hinder, delay, or defraud Plaintiffs, who are present creditors.

242.     Those transfers reflect numerous "badges of fraud" including, but not limited to the fact that:

> a.   They were made to other entities affiliated with Millennia in which, upon information and belief, Sinito has an interest and is an insider; and

> b.   Under the Amended and Restated Operating Agreements, those transfers were not permitted.

243.     Moreover, Defendants made those transfers without receiving reasonably equivalent value in exchange for the transfers.

244.     In making/accepting the transfers, Defendants acted with a conscious disregard for Plaintiffs' rights, with a great probability of causing Plaintiffs substantial harm.

245.     Plaintiffs are entitled to a return of all fraudulently transferred funds.

246.    Defendants' fraudulent transfers are a direct and proximate cause of damages suffered by Plaintiffs in excess of $75,000, with the exact amount to be proven at trial.

247.    Further, Plaintiffs are entitled to an award of punitive damages and attorneys' fees as a result Defendants' fraudulent transfers, as those fraudulent transfers were intentional and the result of malice.

**COUNT XIX**
**(Civil RICO Violations (18 U.S.C. § 1962(a)-(d)) – Frank T. Sinito, Millennia Housing Management, and Millennia Housing Development)**

248.    Plaintiffs incorporate the foregoing allegations as if fully set forth verbatim.

249.    Defendants are some of the numerous individuals and entities controlled by Sinito collectively operating under the moniker "The Millennia Companies," which constitute an enterprise, referred to in the Complaint as the "Sinito Enterprise."

250.    Sinito, Millennia Housing Development, and Millennia Housing Management and each member of the Sinito Enterprise is a "person" as defined by 18 U.S.C. § 1961(3).

251.    The Sinito Enterprise constitutes an "enterprise" as defined by 18 U.S.C. § 1961(4) because the members of the Sinito Enterprise have associated together for the common purpose of intentionally and willfully defrauding Plaintiffs and, upon information and belief, other victims.

252.    Sinito, Millennia Housing Development, and Millennia Housing Management have conspired to and have actually conducted a criminal enterprise via the Sinito Enterprise that has engaged in a pattern and practice of racketeering activity in violation of 18 U.S.C. § 1962 that has injured Plaintiffs' business and property.

253.    Sinito personally conducts the affairs of the Sinito Enterprise by leading, running, managing, and directing the affairs of the Sinito Enterprise via The Millennia Companies.

254.  Upon information and belief, Sinito personally controls, directs, and receives financial benefit from each of the companies that comprise The Millennia Companies.

255.  Upon information and belief, The Millennia Companies includes at least the following entities and individuals: Millennia Housing Development, Millennia Housing Management, Millennia Housing Capital LLC, Hartford Avenue Apartments LLC, Peace Lake LA TC LP, Snowberry Investments LLC, Marquette Snowberry Limited, Cassidy Village, Ohio LLC, Memphis Towers TN TC LP, Brookwood NC LLC, Wilshire Woods Apartments LLC, Morningside 2192 TN LLC, Winchester I Investment LLC, Frank Sinito, Malisse Sinito, and Angelica Sinito.

256.  In conducting the affairs of the Sinito Enterprise, Sinito, Millennia Housing Development, and Millennia Housing Management, have engaged in a pattern and practice of racketeering activity, including but not limited to by defrauding business partner investors (including Plaintiffs) and embezzling funds via wire fraud that they have invested in one or more of The Millennia Companies, including as alleged in Count XVIII of this Complaint (incorporated here by reference).

257.  Sinito, Millennia Housing Development, and Millennia Housing Management have committed these acts of fraud and embezzlement via wire fraud far more than two times within the past ten years.

258.  Upon information and belief, Sinito, Millennia Housing Development, and Millennia Housing Management have engaged in a pattern and practice of racketeering activity that includes having embezzling funds via wire fraud by making unauthorized disbursements from various properties.

259.    Upon information and belief, many of these unauthorized disbursements have been to Sinito himself or to other members of the Sinito Enterprise in which he has a financial interest.

260.    Each of these acts of embezzlement via such unauthorized distributions constitutes wire fraud in violation of 18 U.S.C. § 1343 and a separate act of racketeering activity as defined by 18 U.S.C. § 1961(1), and they demonstrate a pattern and practice of racketeering activity against Plaintiffs specifically.

261.    In violation of 18 U.S.C. § 1962(a)-(d), Sinito, Millennia Housing Development, and Millennia Housing Management – including through numerous separate acts of wire fraud in violation of 18 U.S.C. § 1343 that constitute a pattern of racketeering – have derived income and acquired or maintained an interest in the Sinito Enterprise, which engages in interstate commerce.

262.    To date, Plaintiffs have discovered at least 12 unauthorized disbursements of funds to Sinito himself and various entities affiliated with Sinito and Millennia, other than the other Defendants in this lawsuit, in a total amount exceeding $750,000 over at least the last four years.

263.    Each of the above transactions constitutes "racketeering activity" relating to wire fraud as defined by 18 U.S.C. § 1961(1), in violation of 18 U.S.C. § 1962(a)-(d) and 18 U.S.C. § 1343.

264.    Upon information and belief, the actions alleged above are also a part of Sinito's, Millennia Housing Development's, and Millennia Housing Management's pattern and practice of racketeering activity whereby they commit intentional acts to defraud business partner investors like Plaintiffs to invest in one or more of The Millennia Companies' operation of low income housing projects and obtaining federal Low Income Housing Tax Credits.

265.    Upon information and belief, once Sinito, Millennia Housing Development, and Millennia Housing Management have fraudulently induced such investments, they then routinely engage in acts of embezzlement via wire fraud to the injury of those investors.

266.    Sinito's, Millennia Housing Development's, and Millennia Housing Management's pattern and practice is further evidenced by other lawsuits filed against Sinito and entities comprising the Sinito Enterprise credibly asserting similar allegations. (*See, e.g.*, *Paul Zaretsky v. Millennia Housing Capital, LLC, et al.*, Cuyahoga County (Ohio) Common Pleas, Case No. CV 24 100446, and *Willton NC NY, LLC v. MH I Investment LLC, et al.*, United States District Court for the Southern District of New York, Case No. 1:24-cv-05526.)

267.    Upon information and belief, Sinito's, Millennia Housing Development's, and Millennia Housing Management's pattern and practice of racketeering activity as alleged above also includes his use of The Millennia Companies to violate HUD obligations and requirements as part of the Sinito Enterprise's operation of low income housing projects and attempts to obtain federal Low Income Housing Tax Credits, all as a part of a scheme to defraud and then embezzle from investors like Plaintiffs via wire fraud.

268.    HUD has accused Sinito and Millennia Housing Management of engaging in financial mismanagement of tenants' security deposits as well as taxpayer funds providing housing assistance, along with not maintaining property conditions. Similarly, HUD has accused Sinito and Millennia Housing Management of misappropriating millions of dollars from HUD-insured or HUD-subsidized properties throughout the country. Based on these activities, HUD debarred Sinito and Millennia Housing Management from participating in any new HUD business for five years, which is the most severe sanction HUD can impose on a property owner.

269.     Upon information and belief, Plaintiffs also expect they will uncover other racketeering activities by Sinito, Millennia Housing Development, Millennia Housing Management and the Sinito Enterprise during discovery.

270.     Sinito's, Millennia Housing Development's, and Millennia Housing Management's repeated acts of wire fraud constitute "a pattern of racketeering activity" pursuant to 18 U.S.C. § 1961(5). They have committed these patterns and practices of racketeering activity knowingly and intentionally, with the intent to damage Plaintiffs' business and property interests.

271.     The pattern and practice of racketeering activities alleged above, including acts of wire fraud, are related, they occurred in and they affected interstate commerce within the meaning of 18 U.S.C. § 1962(c), and they pose a threat of continued criminal activity, both to Plaintiffs and to Sinito's other business partners specifically, and to the public generally.

272.     The acts of wire fraud alleged above have continued for years and will likely continue into the future if Sinito, Millennia Housing Development, and Millennia Housing Management are not stopped.

273.     Plaintiffs have standing to bring this claim because there is a direct relationship between their injuries and Sinito's, Millennia Housing Development's, and Millennia Housing Management's conduct involving a pattern and practice of racketeering activities, as described above.

274.     As a direct and proximate result of Sinito, Millennia Housing Development, and Millennia Housing Management, and the Sinito Enterprise's actions and pattern and practice of racketeering activities, including wire fraud, Plaintiffs have suffered an injury to their business and property, in excess of $75,000 with the exact amount to be proven at trial.

275.   Pursuant to 18 U.S.C. § 1964, Plaintiffs are entitled to their damages from those violations, specifically including but not limited to treble damages and costs of this lawsuit, including reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, the RIK Members demand judgment against Defendants Brandegee Garden NY, LLC; Brandegee Garden NY MM, LLC; Buck Apartments NY, LLC; Buck Apartments NY MM, LLC; Cooper Apartments NY, LLC; Cooper Apartments NY MM, LLC; Genesee Tower NY, LLC; Genesee Tower NY MM, LLC; Knamm Apartments NY, LLC; Knamm Apartments NY MM, LLC; Village Point NY, LLC; Village Point NY MM, LLC; Millennia Housing Development, Ltd., Millennia Housing Management, Ltd., and Frank T. Sinito, jointly and severally, and pray for relief, as follows:

1.   For Payment of the Put Right in an amount to be proven at trial, in excess of $75,000;

2.   For total damages in an amount to be proven at trial, in excess of $75,000;

3.   For any and all relief afforded pursuant to 18 U.S.C. § 1964, specifically including but not limited to treble damages and costs of this lawsuit, including reasonable attorneys' fees;

4.   For an order requiring Defendants to return immediately all misappropriated or fraudulently transferred funds;

5.   For an order requiring a full accounting of the books and records of the Brandegee Defendants, the Buck Defendants, the Cooper Defendants, the Genesee Defendants, the Knamm Defendants, and the Village Point Defendants;

6.   For a declaration that Defendants are under a present obligation to honor Plaintiffs' Put Rights;

7.   For a declaration ordering that Plaintiffs' Put Rights be satisfied before any proceeds of the sale of the Buck Portfolio are distributed;

8.   For punitive damages, attorneys' fees, and court costs for all claims for which they are available;

9.      For pre- and post-judgment interest; and

10.     For such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Joshua A. Klarfeld*
Joshua A. Klarfeld (OH – 0079833)
Sara S. Dorland (OH – 0095682)
UB GREENSFELDER LLP
1660 W. 2nd Street, Suite 1100
Cleveland, Ohio 44113
Telephone: (216)583-7000
Facsimile: (216) 583-7001
Email:          jklarfeld@ubglaw.com
                sdorland@ubglaw.com

*Attorneys for Plaintiffs RIK IOF Millennia Buck Portfolio, LLC, Lobo Feroz, LLC, and Jonathon Grassi*

46

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs RIK IOF Millennia Buck Portfolio, LLC, Lobo Feroz, LLC, and Jonathon Grassi, hereby demand a trial by jury of the maximum number of jurors provided by law with respect to each issue triable to a jury.

Respectfully submitted,

*/s/ Joshua A. Klarfeld*
Joshua A. Klarfeld (OH – 0079833)
Sara S. Dorland (OH – 0095682)
UB GREENSFELDER LLP
1660 W. 2nd Street, Suite 1100
Cleveland, Ohio 44113
Telephone: (216)583-7000
Facsimile: (216) 583-7001
Email:        jklarfeld@ubglaw.com
                  sdorland@ubglaw.com

*Attorneys for Plaintiffs RIK IOF Millennia Buck Portfolio, LLC, Lobo Feroz, LLC, and Jonathon Grassi*